IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TIMOTHY McDEVITT, | ) | Civ. No. 06-00216 ACK/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIANNE M. GUENTHER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER

### I.    Procedural Background

On April 20, 2006, Timothy McDevitt ("Plaintiff") filed a Complaint against Lianne M. Guenther ("Defendant") relating to a prenuptial agreement that Defendant allegedly prepared for Plaintiff.  The Complaint alleges that Defendant committed legal malpractice, negligence, breach of fiduciary duties, non-disclosure, and fraud, and violated H.R.S. 480-2.  See Complaint at 8.  The Complaint seeks $524,069.71 in actual damages in addition to "[g]eneral, special, treble and punitive damages in amounts to be proven at the time of trial" and attorneys' fees, costs, and interest.  Id. at 9.

On May 17, 2006, Defendant filed a Motion to Dismiss Complaint, or in the Alternative, to Transfer and a Memorandum in Support of Motion ("Motion to Dismiss"), seeking dismissal for

lack of personal jurisdiction, improper venue, insufficient
service of process, and/or failure to state a claim upon which
relief can be granted, or in the alternative, transfer to the
District of Minnesota.  See Motion to Dismiss at 1-2.  On July 6,
2006, Plaintiff filed a Memorandum in Opposition ("Opposition").
On July 13, 2006 Defendant filed a Reply in Further Support of
the Motion to Dismiss ("Reply").  On July 24, 2006, the Court
held a hearing on the Motion to Dismiss.

## II.  Factual Background

Plaintiff alleges, and Defendant does not dispute, that
Plaintiff is, and was at all pertinent times, a resident of the
State of Hawaii, where he practices cosmetic and reconstructive
surgery of the eyelids, Lacrimal System and Orbital Laser Skin
Resurfacing in Honolulu, Hawaii.  See Complaint at 1-2;
Declaration of Timothy McDevitt at 1 (July 6, 2006) ("McDevitt
Decl."); Opposition at 2; Declaration of Lianne M. Guenther at 3
(May 1, 2006) ("Guenther Decl.").  The parties agree that
Defendant is, and was at all pertinent times, a resident of the
State of Minnesota, where she is a sole legal practitioner.  See
Complaint at 2; McDevitt Decl. at 1-2; Guenther Decl. at 1-2.[1/]

_____

[1/]Plaintiff does not dispute Defendant's contentions that
she has never owned property in Hawaii, has never had a telephone
number or mailing address in Hawaii, has never conducted any
business in Hawaii (other than as alleged in this lawsuit), has
never been employed or otherwise worked in Hawaii, does not have
any bank accounts or other tangible personal or real property in
(continued...)

Defendant previously attended college with Andrea Yoakam ("Yoakam") in Minnesota.  See Complaint at 2; McDevitt Decl. at 2; Guenther Decl. at 3.  In 2000, Yoakam was living in Hawaii, where she worked as a nurse and was engaged to be married to Plaintiff.  See Complaint at 2; McDevitt Decl. at 2; Guenther Decl. at 3.  According to Defendant, she knows Plaintiff through Yoakam.  See Guenther Decl. at 3.

According to Plaintiff, he and Yoakam contemplated continuing to live in Honolulu, Hawaii after they were married. See Complaint at 2; McDevitt Decl. at 2.  Defendant does not dispute this point, but states that she understood that Yoakam's family remained in Minnesota and that the marriage would occur in Minnesota.  See Guenther Decl. at 4.

According to Plaintiff, he entered into an attorney-client relationship with Defendant, in which Defendant agreed to prepare a prenuptial agreement to be executed by Plaintiff and Yoakam prior to their marriage.  See Complaint at 3; McDevitt Decl. at 2.  According to Defendant, she never agreed to act as an attorney for McDevitt.  See Guenther Decl. at 4.  Defendant claims that she orally informed Yoakam of three things when the issue of a prenuptial agreement arose: (1) Defendant was not

---

[1/](...continued)
Hawaii, has never paid any taxes in Hawaii, and has never advertised or solicited any person in Hawaii to use her professional services (other than as alleged in this lawsuit). See Guenther Decl. at 2.

authorized to practice law in Hawaii, (2) it would not be appropriate for Defendant to give legal advice related to Hawaii, and (3) Yoakam should seek Hawaii counsel for the Hawaii implications of the documents. See Guenther Decl. at 4. Plaintiff claims that Defendant never informed him of, and Yoakam never informed him that Guenther said, any of these three things. See McDevitt Decl. at 3-4. Plaintiff claims that if Defendant had informed him that she could not represent him on the prenuptial agreement, he would have retained competent family law counsel from Honolulu to represent him in that matter. See McDevitt Decl. at 6.

According to Plaintiff, he had a telephone conversation with Defendant in 2000 about Plaintiff's concern that his personal assets were relatively greater than Yoakam's personal assets, and inquired about what could be done about the situation prior to marriage. See Complaint at 2-3; McDevitt Decl. at 2. According to Plaintiff, Defendant advised him that under such circumstances, a prenuptial agreement would be appropriate. See Complaint at 2-3; McDevitt Decl. at 2. When the telephone conversation occurred, Plaintiff was in Hawaii and Defendant was in Minnesota. See McDevitt Decl. at 2; Guenther Decl. at 3.

According to Plaintiff, on August 20, 2000, he faxed from Hawaii to Defendant in Minnesota the prenuptial agreement terms on which Plaintiff and Yoakam had agreed. See Complaint at

4

3; McDevitt Decl. at 2; id. at Exhibit 1.  The facsimile was addressed to Defendant from Plaintiff; it asked Defendant to "[p]lease review, add what you want[,] use template and fax back to me . . . [p]lease charge me your usual fee;" it was signed "Tim" and gave "work" and "cell" telephone numbers for Defendant to call if she had questions.  See McDevitt Decl. at Exhibit 1.

According to Defendant, she understood this facsimile from Plaintiff to be "in furtherance of my discussions with Yoakam."  See Guenther Decl. at 4.  Those discussions with Yoakam were, according to Defendant, a telephone call from Yoakam to Defendant in Minnesota, in which Yoakam asked Defendant to review a form of prenuptial agreement that Plaintiff and Yoakam had begun to negotiate.  See Guenther Decl. at 3.  According to Defendant, Defendant initially declined but finally agreed to review the agreement as a favor for Yoakam.  Id.  According to Defendant, there was no discussion of a fee, she did not anticipate charging a fee, and she did not execute a retainer agreement or take any other action she customarily takes when she is engaged by a client.  Id. at 3-4.  According to Defendant, she never had any substantive conversations with Plaintiff about the prenuptial agreement except when Yoakam was on the telephone too. Id. at 4.

According to Plaintiff, on August 30, 2000, Defendant faxed from Minnesota to Plaintiff and Yoakam in Hawaii a letter

5

and prenuptial agreement.  <u>See</u> Complaint at 3-4; McDevitt Decl. at 3; <u>id.</u> at Exhibit 2.  Defendant does not dispute this fact. <u>See</u> Guenther Decl. at 3.  The prenuptial agreement states that Plaintiff and Yoakam "are contemplating legal marriage under the laws of the state of Hawaii."  <u>See</u> Complaint at Ex. 1.

According to Plaintiff, just prior to faxing this letter and prenuptial agreement, Defendant discussed with him in a telephone conversation her recommended changes to the prenuptial agreement.  <u>See</u> Complaint at 5; McDevitt Decl. at 3. According to Plaintiff, Defendant advised him in this telephone conversation that a lump sum payment of $250,000 without annual or periodic increases would likely make the agreement unenforceable, and as a result, Defendant recommended the changes memorialized in the agreement that she prepared (i.e., for periodic increases to the lump sum depending on how long the parties remained married, to be capped at $1 million).  <u>See</u> McDevitt Decl. at 3 and Exhibit 2.

According to Plaintiff, he sent Defendant a personal check for $500 that included the notation "Review and draft Prenuptial"; Defendant later cashed the check.  <u>See</u> Complaint at 5; McDevitt Decl. at 3.  Defendant agrees that she received a $500 check signed by Plaintiff in September 2000, however, she claims that she did not cash the check immediately because she had only helped Yoakam as a friend.  <u>See</u> Guenther Decl. at 5.

According to Defendant, she only cashed the check several months later at Yoakam's urging.  Id.

According to Plaintiff, on September 9, 2000, he and Yoakam executed the prenuptial agreement prepared by Defendant. See Complaint at 5 and Ex. 1; McDevitt Decl. at 3 and Ex. 3.  The agreement was executed in Honolulu, Hawaii.  See Complaint at Ex. 1; McDevitt Decl. at Ex. 3.

On September 15, 2000, Plaintiff and Yoakam were married in Minnesota.  See Complaint at 5-6; McDevitt Decl. at 4; see also Guenther Decl. at 5.  During their marriage, Plaintiff and Yoakam continued to live in Honolulu, Hawaii.  See Complaint at 6; McDevitt Decl. at 4.  On July 23, 2003, Plaintiff and Yoakam were separated.  See Complaint at 6; McDevitt Decl. at 4.

In October 2003, according to Plaintiff, he filed a pro se complaint for divorce in Hawaii state court and was surprised when Yoakam informed him that Defendant advised her that the prenuptial agreement could not be enforced by Plaintiff because Yoakam did not have independent counsel.  See Complaint at 6; McDevitt Decl. at 4.  According to Plaintiff, he and Yoakam thereafter retained Honolulu attorneys to handle the divorce and related property division matters.  See Complaint at 6; McDevitt Decl. at 4.  According to Plaintiff, the attorneys argued over the amount to which Yoakam was entitled, including whether the prenuptial agreement was enforceable.  Complaint at 7; McDevitt

7

Decl. at 4-5.  The matter settled before trial, according to Plaintiff.  <u>See</u> Complaint at 8; McDevitt Decl. at 5.  Plaintiff is seeking various damages from Defendant.  <u>See</u> Complaint at 8-9.

Plaintiff alleges that material witnesses in this case include: himself; Defendant; Yoakam; Plaintiff's divorce attorney and that attorney's associates; Yoakam's attorney; the mediator in the divorce proceedings; a family law and ethics expert; and various damages experts and witnesses.  <u>See</u> McDevitt Decl. at 5-6.  Plaintiff alleges that all of these witnesses, except Defendant and Yoakam, live in Hawaii.  <u>Id.</u> at 6.  Defendant agrees that two of the three material witnesses (she and Yoakam) live in Minnesota.  <u>See</u> Guenther Decl. at 5.

## III. Motion to Dismiss for Lack of Personal Jurisdiction

### A.   Standard for Motion to Dismiss for Lack of Personal Jurisdiction

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).  It is within the Court's discretion to allow the plaintiff to submit affidavits, allow affidavits plus discovery, or to conduct an evidentiary hearing.  <u>Data Disc., Inc. v. Systems Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1285 (9th Cir. 1977).  When the Court rules without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" through

the submitted materials in order to avoid dismissal.[2/]
Schwarzenegger, 374 F.3d at 800; Data Disc., 557 F.2d at 1285.
In such cases, the Court only inquires into whether the
plaintiff's "pleadings and affidavits make a prima facie showing
of personal jurisdiction." Id. (quoting Caruth v. International
Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)).

"In determining whether [the plaintiff] has met this
burden, uncontroverted allegations in [the] complaint must be
taken as true, and 'conflicts between the facts contained in the
parties' affidavits must be resolved in [the plaintiff's] favor
for purposes of deciding whether a prima facie case for personal
jurisdiction exists.'" American Tel. & Tel. Co. v. Compagnie
Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (quoting WNS
Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)); accord Pure,
Ltd. v. Shasta Bev., Inc., 691 F. Supp. 1274, 1277 (D. Haw.
1988).

B.   **Analysis of Personal Jurisdiction**

To subject a nonresident defendant to suit, both the
long-arm statute of the state in which the Court sits and
constitutional due process requirements must be satisfied.[3/]   The

---

[2/]The plaintiff "must eventually establish jurisdiction by a
preponderance of the evidence either at a pretrial evidentiary
hearing or at trial." Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp.
1134, 1137 (D. Haw. 1997).

[3/]Because there is no applicable federal statute and the
(continued...)

Hawaii Supreme Court interprets Haw. Rev. Stat. § 634-35 as allowing jurisdiction "to the full extent permissible by the Due Process Clause of the Fourteenth Amendment." Cowan v. First Ins. Co., 608 P.2d 394, 399 (Haw. 1980); accord Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1236 n.7 (D. Haw. 2003) (citation omitted). Because Hawaii's long-arm statute reaches to the full extent permitted by the Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction. See, e.g., Schwarzenegger, 374 F.3d at 800-01.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985); accord Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 269-70 (9th Cir. 1995). Due process is satisfied if the Court has "either general jurisdiction or specific jurisdiction" over the defendant. Doe v. American Natl. Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997); Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1236 (D. Haw. 2003) (citation omitted).

---

(...continued)
Court sits in diversity, Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, controls. See, e.g., Loral Terracom v. Valley Nat'l Bank, 49 F.3d 555, 559 (9th Cir. 1995).

General jurisdiction exists only when the defendant's "activities in the state are 'substantial' or 'continuous and systematic.'"  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting <u>Data Disc.</u>, 557 F.2d at 1287).  Plaintiff does not contend that Defendant has engaged in any activity in Hawaii that would confer general jurisdiction on the Court.  <u>See</u> Opposition at 12.  Therefore, the Court must determine whether it has specific jurisdiction over Defendant.

Specific personal jurisdiction requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945); <u>accord</u> <u>Burger King</u>, 471 U.S. at 475.  To determine whether specific jurisdiction exists, the Court employs "a three-part test to evaluate the nature and quality of [the defendant's] contacts" with the forum state.  <u>Sher</u>, 911 F.2d at 1361.  Specifically:

> (1) The non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport

11

> with fair play and substantial justice, i.e.
> it must be reasonable.

Schwarzenegger, 374 F.3d at 801-02 (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."  Omeluk, 52 F.3d at 270.

The plaintiff bears the burden of satisfying the first two requirements of the test.  Schwarzenegger, 374 F.3d at 801-02 (citation omitted).  If the plaintiff fails to satisfy either of these requirements, personal jurisdiction is not established in the forum state.  Id.  If the plaintiff succeeds in satisfying both the first and second requirement, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Id. (quoting Burger King, 471 U.S. at 476-78).  The Court may exercise jurisdiction "with a lesser showing of minimum contacts than would otherwise be required if considerations of reasonableness dictate."  Haisten v. Grass Valley Med. Reimb. Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).

## 1.   Purposeful Availment

The first prong of the three-part specific jurisdiction test contemplates whether the defendant's "conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there."  Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Limited,

328 F.3d 1122, 1130 (9th Cir. 2003) (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  This prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of the activities at the forum; or by some combination thereof."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).  This analysis prevents findings of personal jurisdiction that might otherwise arise "as the result of random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 479.

In cases arising out of contractual relationships, even if some claims sound in tort, the Ninth Circuit analyzes purposeful availment by looking at "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  Burger King, 471 U.S. at 479; Sher, 911 F.2d at 1362.  In the instant case, Plaintiff's claims (even though some sound in tort) arise out of his alleged contractual relationship with Defendant - that she would provide him legal services related to the drafting of a prenuptial agreement - so the Court will apply this Burger King and Sher purposeful availment analysis.  See Sher, 911 F.2d at 1362; Campbell v. Hubbard, No. CV05-1278PHXDGC, 2006 WL 66667, at *4 (D. Ariz. Jan. 11, 2006); see also Helfand v. Gerson, 105 F.3d 530, 537-538 (9th Cir. 1997) (where state law provides for

13

attorney's fees in actions in the nature of assumpsit, a legal malpractice claim should be treated as contract claim for purposes of determining that it was in the nature of assumpsit); Higa v. Mirikitani, 55 Haw. 167, 170-173, 517 P.2d 1, 4-5 (Haw. 1973) (for purpose of determining the applicable statute of limitations, an action for legal malpractice should be treated as a contract action).[4/]

The formation of a contract with an out-of-state party does not alone establish sufficient contacts for personal jurisdiction over the non-resident party. Burger King, 471 U.S. at 478; Unocal, 248 F.3d at 924. In this case, there are factors weighing both for and against a finding of sufficient contacts for purposeful availment. Weighing against purposeful availment in this case are Defendant's lack of physical presence in Hawaii and the absence of active solicitation of her legal practice in Hawaii.[5/] See Roth, 942 F.2d at 621-622. However, the Court

---

[4/]Contract and tort cases are treated differently under the purposeful availment analysis in the Ninth Circuit. Yahoo!, 433 F.3d at 1206; Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991). In tort cases, the purposeful availment prong of the test is measured by the "effects" test introduced by the Supreme Court in Calder v. Jones 465 U.S. 783 (1984); see also Roth, 942 F.2d at 621; see also Resnick, 283 F. Supp. 2d at 1139. The test is satisfied if the defendant is alleged to have 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state. Resnick. 283 F. Supp. 2d at 1486; Harris, 382 F.3d at 1131. See also, infra, footnote 7.

[5/]Although Defendant was not physically present in Hawaii,
(continued...)

finds that these facts are outweighed by the contemplated future consequences of Defendant's actions.  See Burger King, 471 U.S. at 479; Roth, 942 F.2d at 622.  For purposes of this Motion, the Court takes as true Plaintiff's allegations that Defendant entered into a contract to provide advice to Plaintiff on the law of Hawaii; she knew that Plaintiff and Yoakam planned to continue to live in Hawaii after they were married; she knew that because they planned to continue to live in Hawaii, should Plaintiff and Yoakam seek a divorce, they would likely seek to have a Hawaii court interpret the prenuptial agreement; she advised Plaintiff to modify the lump sum payment provision of the prenuptial agreement in order to make it enforceable; and most importantly, Defendant drafted the terms of the contract to explicitly state that Plaintiff and Yoakam "are contemplating legal marriage under the laws of the state of Hawaii."  See American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties'

---

[5]/(...continued)
she did participate in telephone calls with Plaintiff while he was located in Hawaii, and she did fax documents to Plaintiff in Hawaii.  However, these actions alone do not constitute purposeful availment.  See Roth, 942 F.2d at 622 (ordinarily, use of mail, telephone, or other communications methods do not qualify as purposeful activity invoking the benefits and protection of the forum state).

affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" ) (quoting WNS Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)); accord Pure, Ltd. v. Shasta Bev., Inc., 691 F. Supp. 1274, 1277 (D. Haw. 1988).  Far and away, the contract between Plaintiff and Defendant involved contemplated future consequences in Hawaii, not in Minnesota or in any other location.  For this reason, in light of Plaintiff's allegations and evidence, the Court finds that Defendant's conduct and connection with Hawaii are sufficient to support a conclusion that she purposefully availed herself of the privilege and opportunity of conducting business in Hawaii.[6]

The cases cited by Defendant do not compel a different conclusion because in the instant case, although the attorney was physically located outside of the state of Hawaii, the attorney-client relationship was undertaken for the purposes of providing advice on Hawaii law and drafting a contract governing property physically located in Hawaii, under the laws of the state of

_____

[6]The Court notes that, in addition, it would have been foreseeable to Defendant that the legal services she was providing to Plaintiff would cause injury in Hawaii.  The foreseeability of causing injury in the forum state is not a sufficient basis on which to exercise jurisdiction and does not in itself establish purposeful availment.  See Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).  However, the foreseeability of injury in Hawaii provides additional support for the Court's finding of purposeful availment.

Hawaii.  None of the cases cited by Defendant involving suits against attorneys contain such a clear contemplation of future consequences in the forum state.  See Sher, 911 F.2d 1357 (no personal jurisdiction in California where Florida law firm represented a California resident in a criminal proceeding in Florida court); Kowalski v. Doherty, Wallace, Pillsbury and Murphy, 787 F.2d 7 (1st Cir. 1986) (no personal jurisdiction in New Hampshire where Massachusetts law firm represented a New Hampshire resident in a Massachusetts cause of action in a Massachusetts court); Mayes v. Leipziger, 674 F.2d 178 (2d Cir. 1982) (no personal jurisdiction in New York where California law firm represented a New York resident in a matter before a California court); Campbell, 2006 WL 66667 (no personal jurisdiction in Arizona where Kansas law firm represented a Kansas resident in litigation in Kansas but resident later moved to Arizona).

Accordingly, the Court finds that Plaintiff has met his burden of establishing the purposeful availment prong of the specific personal jurisdiction analysis.[7]

---

[7]The Court notes that if it had found that the "effects test" is applicable to the purposeful availment analysis in this case, the Court would find that Plaintiff has met his burden of establishing the purposeful availment prong of the specific personal jurisdiction analysis under that test.  See, supra, footnote 4.

### 2.    Arising Out of Forum Related Activities

The second prong of the jurisdictional analysis is met if the claim "arises out of or relates to the defendant's forum-related activities." Harris, 382 F.3d at 1129 (quoting Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1485 (9th Cir. 1993). In short, the second prong is "met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." Loral Terracom, 49 F.3d at 561; see also Gray, 913 F.2d at 761.

In this case, Plaintiff has presented evidence that but for the prenuptial agreement that Defendant faxed to Plaintiff and the legal advice she provided to Plaintiff in telephone conversations, this cause of action would not have arisen because Plaintiff would have hired competent Hawaii family law counsel to advise and represent him in the drafting of the prenuptial agreement. See McDevitt Decl. at 6.  If in providing Plaintiff with advice related to the prenuptial agreement that she drafted under the laws of Hawaii, Defendant had informed Plaintiff that she was not licensed to practice law in Hawaii, it was not appropriate for her to give legal advice relating to Hawaii, or that he should seek Hawaii counsel, this cause of action would not have arisen. See id. at 3-4, 6.  Accordingly, the Court finds that Defendant's contacts with Hawaii satisfy the second prong of the analysis for specific jurisdiction.

### 3.   Reasonableness

Because Plaintiff has succeeded in satisfying both the first and second requirements of the jurisdictional analysis, "the burden . . . shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 801-02 (quoting Burger King, 471 U.S. at 476-78).   The Court may exercise jurisdiction "with a lesser showing of minimum contacts than would otherwise be required if considerations of reasonableness dictate." Haisten v. Grass Valley Med. Reimb. Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986).   The reasonableness determination requires the Court to consider the following factors:

> (1) The extent of the defendants' purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendants' state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993) (citation omitted).   The Court balances all seven

factors, recognizing that none of the factors is dispositive in itself.  Id.

(1) Purposeful Interjection

The Court first considers the extent of Defendant's purposeful interjection into the forum state.  "The degree of interjection is a factor to be weighed in assessing the overall reasonableness of the jurisdiction." Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (quoting Core-Vent, 11 F.3d at 1488).  "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." Core-Vent, 11 F.3d at 1488 (citation omitted).  Here, Defendant interjected herself into Hawaii by providing legal advice to Hawaii resident(s) regarding Hawaii family law, participating in and perhaps making telephone calls to Hawaii in furtherance of that purpose, drafting a prenuptial agreement to be governed by Hawaii law, and faxing that agreement to Hawaii.

Because Defendant interjected herself into Hawaii to a palpable degree and the Court found that Defendant's contacts with Hawaii were sufficient to establish purposeful availment, the Court finds that this factor weighs in favor of Plaintiff. See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988) (finding that the factor of purposeful interjection is analogous to the purposeful availment analysis).

20

(2) Burden on Defendant

The Court next considers the burden of defending a lawsuit in Hawaii on Defendant.  "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (internal citations omitted).  As discussed above, Defendant resides and works in Minnesota.

The inconvenience of litigating in Hawaii does not amount to a deprivation of due process in this case.  Resnick, 283 F. Supp. 2d at 1141 (noting that the burden on defendants and their out-of-state witnesses was significant, but finding that the inconvenience did not amount to a due process deprivation); see also Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1069 (D. Haw. 2000).  Moreover, this Court has observed that "[r]ecent advancements in communication and transportation . . . have greatly reduced the inconvenience once associated with defending in another forum."  Robinson Corp. v. Auto-Owners Ins. Co., 304 F. Supp. 2d 1232, 1240 (D. Haw. 2003)(citing Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998)). This factor favors Defendant, but only slightly.

(3) Conflict with Minnesota sovereignty

The next factor is the extent to which the exercise of jurisdiction would conflict with the sovereignty of Defendant's state.  There is no evidence presented to demonstrate a conflict with the sovereignty of Minnesota, Defendant's place of residence.  <u>See</u> Motion at 14 ("There is no clash of substantive law between Minnesota and Hawaii.").  Moreover, the sovereignty of a defendant's state is not a significant consideration in actions between citizens of the United States.  <u>Decker Coal Co.</u> <u>v. Commonwealth Edison Co.</u>, 805 F.2d 834, 841 (9th Cir. 1986). This factor weighs in favor of Plaintiff.

(4) Interest of Hawaii

The Court next considers Hawaii's interest in adjudicating the suit.  The state of Hawaii has a strong interest in adjudicating this suit where the prenuptial agreement prepared by Defendant states that the parties are "contemplating legal marriage under the laws of the state of Hawaii" and the agreement was executed in Hawaii by residents of Hawaii.  <u>See</u> <u>Television</u> <u>Events & Marketing, Inc. v. Amcon Distributing Co.</u>, 416 F. Supp. 2d 948, 966-967 (D. Haw. 2006).  Additionally, the state of Hawaii has an interest in protecting its citizens from legal representation by attorneys who are not licensed to practice in Hawaii.  This factor weighs heavily in favor of Plaintiff.

22

(5) Efficiency

The next factor concerns the efficiency of the forum. "Unlike the burden on the defendant, this factor involves a comparison of alternative forums." Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 852 (9th Cir. 1993).  Here, two of the primary witnesses reside in Minnesota; only one resides in Hawaii.  However, Plaintiff has named at least seven additional Hawaii residents whom he plans to call as witnesses; Defendant has not indicated that she plans to call any other witnesses. Thus, the majority of the witnesses reside in Hawaii.

The efficiency of this forum is furthered by the fact that Hawaii law governs the underlying prenuptial agreement, the drafting of which allegedly constituted malpractice by Defendant. In addition, this factor is no longer weighed heavily considering the advances in transportation and communication.  Panavision, 141 F.3d at 1323.  This factor weighs in favor of Plaintiff.

(6) Importance of the Forum

The Court next considers the importance of the forum to Plaintiff's interest in convenient and effective relief.  As discussed above, Plaintiff is a Hawaii resident.  Plaintiff's witnesses, other than Defendant and Yoakam, are located in Hawaii; Plaintiff's exhibits are likely to be located in Hawaii. Moreover, the prenuptial agreement is between two people "contemplating legal marriage under the laws of the state of

23

Hawaii." This factor weighs heavily in favor of Plaintiffs.

(7) Existence of Alternative Forum

Finally, the Court must determine whether an adequate alternative forum exists. The claims against the Defendants could possibly have been brought in the District of Minnesota. Plaintiff bears the burden of proving the unavailability of an alternate forum. See Core-Vent Corp., 11 F.3d at 1490 (citing Pacific Atlantic Trading Co. v. M/V Main Exp., 758 F.2d 1325, 1331 (9th Cir. 1985). Plaintiff has not satisfied this burden of proving that there is no available alternate forums. This factor weighs in favor of Defendant.

(8) Summary of the Seven Factors

The Court concludes, based on these seven factors, that Defendant has failed to meet her burden of presenting a compelling case that this Court's exercise of jurisdiction over her would be unreasonable. The Court concludes that the exercise of jurisdiction over Defendant will comport with fair play and substantial justice and will thus be reasonable

In summary, the Court concludes that Plaintiff has made a prima facie case that the Court has specific personal jurisdiction over Defendant. The Court's exercise of personal jurisdiction will comport with due process and Defendant's contacts with Hawaii, as alleged and evidenced by Plaintiff, satisfy Hawaii's long-arm statute.

24

IV.   **Motion to Dismiss for Lack of Venue or, in the Alternative, Transfer**

   A.   **Standard for Motion to Dismiss for Lack of Venue or, in the Alternative, Transfer**

The general venue statute, 28 U.S.C. § 1391[8/], states in subsection (a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Pursuant to 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Finally, even if venue is proper in a district pursuant to pursuant to 28 U.S.C. § 1391, the district court may transfer the case to another district for the convenience of the parties and witnesses.  See 28 U.S.C. § 1404(a).  Section 1404(a) states:

---

[8/]28 U.S.C. § 1391 was significantly amended by Congress in 1990.  See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3802.1 (Supp. 2006).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1139 (D. Haw. 1997) (internal quotation marks and citations omitted).

A motion to transfer venue pursuant to Section 1404(a) "requires the Court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-499 (9th Cir. 2000).  For example, the court may consider: (1) the location where the relevant agreements (if any) were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  Id. (additional significant factors include the presence of a forum selection clause and any relevant public policy of the forum state).  "The defendant must make a strong

showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted). For purposes of a Section 1404(a) request to transfer, the moving party ultimately has the burden of showing that an alternative forum is the more appropriate forum for the action. Jones, 211 F.3d at 499.

    **B.   Venue Analysis**

Venue in the District of Hawaii is proper. Pursuant to 28 U.S.C. § 1391(a)(2), "a substantial part of the events or omissions giving rise to the claim occurred" in Hawaii. Plaintiff was in Hawaii during the telephone conversations in which Defendant gave Plaintiff legal advice on the subject of family law. Defendant faxed to Hawaii the prenuptial agreement that she drafted for Plaintiff and Yoakam's execution. The prenuptial agreement was executed in Hawaii and Plaintiff sought to have it enforced in Hawaii. The Court finds that while venue would be proper in Minnesota if this case had been filed there, venue is also proper in Hawaii because a substantial part of the events occurred in Hawaii. See 28 U.S.C. § 1391(a)(2).

The Court declines to transfer this action to the District of Minnesota pursuant to 28 U.S.C. § 1404. Having considered all of the factors set forth above, the Court finds that Defendant failed to make the required strong showing for

transfer.  See Jones, 211 F.3d at 498-499; Resnick, 283 F. Supp. 2d 1128.  Although it will be inconvenient for Defendant to travel to Hawaii to litigate this case, most of the witnesses live in Hawaii, making Hawaii a convenient forum for them. Moreover, courts in Hawaii are more familiar with the law of Hawaii (which governs the prenuptial agreement and thus necessarily must be analyzed to determine whether Defendant committed legal malpractice) than courts in Minnesota.

Accordingly, Defendant's motion to dismiss for lack of venue or, in the alternative, transfer the case to Minnesota is denied.

## V.   Motion to Dismiss for Insufficient Service of Process

In the Motion, filed May 17, 2006, Defendant argues that the Court should dismiss the Complaint because she "has never been served with a Summons and Complaint in this action." Motion at 17.  Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff has until approximately August 20, 2006 to serve Defendant.  On July 7, 2006, Plaintiff's attorney filed with the Court an affidavit stating that Defendant was personally served on July 6, 2006.  Accordingly, the Court denies Defendant's motion to dismiss for insufficient service of process.

**VI.   Motion to Dismiss for Failure to State a Claim for Fraud**

   **A.   Standard for Motion to Dismiss for Failure to State a Claim**

        Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), in deciding a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Wileman Bros. & Elliott, Inc. v. Giannini, 909 F.2d 332, 334 (9th Cir. 1990); Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged under a cognizable legal theory.  Balistreri, 909 F.2d at 699, Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

        In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims."  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1979).  The Court

29

must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims.   Id.

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as lack of jurisdiction or the statute of limitations.  2A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice, ¶12.07 at 12-68 to 12-69 (2d ed. 1991 & supp. 1191-92) (citing Imbler v. Pachtman, 424 U.S. 409 (1976) (emphasis added)).

**B.   Analysis of Motion to Dismiss for Failure to State a Claim for Fraud**

Defendant argues that the Complaint fails to allege fraud with sufficient particularity.  See Motion at 18.  Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") states that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Rule 9(b) has been consistently interpreted as a notice requirement: "It only requires the identification of the circumstances constituting fraud so that Defendant can prepare an adequate answer from the allegations."  See Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).  The Court finds that the Complaint alleges fraud with sufficient particularity because it identifies, in some detail, the

circumstances allegedly constituting fraud (including the time, place, and actions or inactions that constituted the alleged fraud).  The Court finds that Defendant can prepare an adequate answer from the allegations contained in the Complaint.

Similarly, the Court finds that the Complaint is not vague or ambiguous; the Complaint contains sufficient particularity that Defendant can reasonably be required to frame a responsive pleading.  See Federal Rule of Civil Procedure 12(e).  Accordingly, the Court denies Defendant's motion to dismiss for failure to state a claim for fraud and denies Defendant's request that the Court direct Plaintiff to file a more definite statement.

## VII. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Complaint or, in the Alternative, to Transfer is denied.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 25,2006.

_____
Alan C. Kay
Sr. United States District Judge

McDevitt v. Guenther, Civ. No. 06-00216 ACK/BMK, ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER.